# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| PEDRO BRAVO CASTILLO and LUIS VASQUEZ RUEDA., <br><br> Petitioners, <br><br> v. <br><br> WILLIAM BARR, *et al.*, <br><br> Respondents. | CV 20-00605 TJH (AFMx) <br><br> **Temporary Restraining Order** <br><br> **and** <br><br> **Order to Show Cause** |

The Court has considered the application for a temporary restraining order filed by Petitioners Pedro Bravo Castillo and Luis Vasquez Rueda, together with the moving and opposing papers.

Castillo is a 58-year-old man who has, or had, suffered from kidney stones, arthritis and a hernia. Vasquez is a 23-year-old man who is recovering from a work-related facial fracture. Castillo and Vasquez are, currently, being detained at the Adelanto Detention Center ["Adelanto"], in San Bernardino County. San Bernardino County is within the Central District of California.

Castillo and Vasquez filed this case as a petition for a writ of *habeas corpus* and complaint for declaratory and injunctive relief. Castillo and Vasquez are civil

detainees, having been arrested by officers from the United States Department of Homeland Security's ["DHS"] Bureau of Immigration and Customs Enforcement ["BICE"] on March 16, 2020, and March 17, 2020, respectively, and then placed into removal proceedings, with the service of a Notice to Appear at the time of their arrest. Castillo's removal proceedings are pursuant to the Immigration and Nationality Act ["INA"] § 212(a)(6)(A)(i)(I), for being an alien present in the United States without being admitted or paroled, while Vasquez's removal proceedings are pursuant to INA § 237(a)(1)(B), for being an alien who after admission as a nonimmigrant under INA § 101(a)(15) remained in the United States for a time longer than permitted.

Adelanto is a private, for-profit immigration detention facility operated by Geo Group, Inc. Adelanto has the capacity to hold, under normal situations, well over 1,000 detainees through a contract with BICE. Over the years, and as recently as 2018, DHS's Office of the Inspector General had, repeatedly, found that significant and various health and safety risks existed at Adelanto.

On March 4, 2020, the State of California declared a state of emergency in response to the coronavirus and the resulting COVID-19 disease. On March 10, 2020, San Bernardino County followed suit and declared a state of emergency. On March 11, 2020, the World Health Organization ["WHO"] declared COVID-19 to be a global pandemic. On March 13, 2020, President Donald J. Trump, formally acknowledged and declared a national emergency in response to WHO's pandemic declaration.

On March 18, 2020, BICE announced that "[t]o ensure the welfare and safety of the general public as well as officers and agents in light of the ongoing COVID-19 pandemic response, [it] will temporarily adjust its enforcement posture beginning today … [and that its] highest priorities are to promote life-saving and public safety activities." Further, BICE stated that it would focus enforcement "on public safety risks and individuals subject to mandatory detention based on criminal grounds [, and for those people who do not fall into those categories, agents] will exercise discretion to delay enforcement actions until after the crisis or utilize alternatives to detention, as

appropriate."

According to the United States Centers for Disease Control and Prevention, the coronavirus is spread mainly through person-to-person contact. More specifically, the coronavirus is spread between people who are in close contact – within about 6 feet – with one another through respiratory droplets produced when an infected person coughs or sneezes. The droplets can land in the mouths or noses, or can be inhaled into the lungs, of people who are within about 6 feet of the infected person. Moreover, studies have established that the coronavirus can survive up to three days on various surfaces.

COVID-19 is highly contagious and has a mortality rate ten times greater than influenza. Most troublesome is the fact that people infected with the coronavirus can be asymptomatic during the two to fourteen day COVID-19 incubation period. During that asymptomatic incubation period, infected people are, unknowingly, capable of spreading the coronavirus. Despite early reports, no age group is safe from COVID-19. While older people with pre-existing conditions are the most vulnerable to COVID-19-related mortality, young people without preexisting conditions have, also, succumbed to COVID-19. There is no specific treatment, vaccine or cure for COVID-19.

Because of the highly contagious nature of the coronavirus and the, relatively high, mortality rate of COVID-19, the disease can spread uncontrollably with devastating results in a crowded, closed facility, such as an immigration detention center. At Adelanto, a holding area can contain 60 to 70 detainees, with a large common area and dormitory-type sleeping rooms housing four or six detainees with shared sinks, toilets and showers. Guards regularly rotate through the various holding areas several times a day. At meal times – three times a day – the 60 to 70 detainees in each holding area line up together, sometimes only inches apart, in the cafeteria. The guards, detainees and cafeteria workers do not regularly wear gloves or masks to prevent the spread of the coronavirus. While detainees have access to gloves, there is no requirement that they wear them. Detainees do not have access to masks or hand

sanitizer – though thorough hand washing could be more effective than hand sanitizers at preventing the spread of the coronvirus.

Just days ago, the first BICE detainee was confirmed to have been infected with COVID-19 in New Jersey at the Bergin County Jail, a BICE detention facility. Moreover, last week, a correctional officer at the Bergin County Jail was, also, confirmed to have been infected.

Yesterday, Judge Analisa Torres of the United States District Court for the Southern District of New York issued an order releasing certain immigration detainees, stating the following:

> The nature of detention facilities makes exposure and spread of the virus particularly harmful. Jaimie Meyer M.D., M.S., who has worked extensively on infectious diseases treatment and prevention in the context of jails and prisons, recently submitted a declaration in this district noting that the risk of COVID-19 to people held in New York-area detention centers, including the Hudson, Bergen County, and Essex County jails, "is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." Meyer Decl. ¶ 7, *Velesaca v. Wolf*, 20 Civ. 1803 (S.D.N.Y. Feb. 28, 2020), ECF No. 42.
>
> Moreover, medical doctors, including two medical experts for the Department of Homeland Security, have warned of a "tinderbox scenario" as COVID-19 spreads to immigration detention centers and the resulting "imminent risk to the health and safety of immigrant detainees" and the public. Catherine E. Shoichet, *Doctors Warn of "Tinderbox scenario" if Coronavirus Spreads in ICE Detention*, CNN (Mar. 20, 2020), https://www.cnn.com/2020/03/20/health/doctors-ice-detention-coronavirus/index.html. "It will be nearly impossible to prevent widespread infections inside the Hudson, Bergen, and Essex County jails

>> now that the virus is in the facilities because detainees live, sleep, and use the bathroom in close proximity with others, and because '[b]ehind bars, some of the most basic disease prevention measures are against the rules or simply impossible.'" Petition ¶ 47 (internal quotation marks and citation omitted).

*Basank, et al., v. Decker, et al.*, 20 Civ. 2518 (S.D.N.Y., Feb. 28, 2020), ECF No. 11.

On March 23, 2020, the Ninth Circuit ordered, *sua* sponte and without further explanation, the release of an immigration petitioner "[i]n light of the rapidly escalating public health crisis, which public health authorities predict will especially impact immigration detention centers." *Xochihua-Jaimes v. Barr*, 2020 WL 1429877, No. 18-71460 (9th Cir. Mar. 23, 2020).

Here, Petitioners base their petition on three claims: (1) Violation of the Fifth Amendment for a state-created danger; (2) Violation of the Fifth Amendment based on the special relationship between the Government and the persons in its custody; and (3) Violation of the Fifth Amendment based on punitive detention.

The theme underlying the Petitioners' various Fifth Amendment claims is that they are civil, not criminal, detainees. When the Government detains a person for the violation of an immigration law, the person is a civil detainee, even if he has a prior criminal conviction. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As civil detainees, Petitioners are entitled to more considerate treatment than criminal detainees, whose conditions of confinement are designed to punish. *See Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982). Moreover, under the Fifth Amendment's Due Process Clause, a civil detainee cannot be subjected to conditions that amount to punishment. *See King v. Cty. of L.A.*, 885 F.3d 548, 556-557 (9th Cir. 2018).

When the Government takes a person into custody and detains him against the person's will, the Constitution imposes upon the Government a duty to assume responsibility for that detainee's safety and general well being. *See Helling v.*

*McKinney*, 509 U.S. 25, 32 (1993). Under the Eighth Amendment, the Government must provide criminal detainees with basic human needs, including reasonable safety. *Helling*, 509 U.S. at 32. The Government violates the Eighth Amendment if it confines a criminal detainee in unsafe conditions. *See Helling*, 509 U.S. at 33. Moreover, the Government may not "ignore a condition of confinement that is sure or very likely to cause serious illness." *See Helling*, 509 U.S. at 32.

The law is clear – the Government cannot put a civil detainee into a dangerous situation, especially where that dangerous situation was created by the Government. *See Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). The Due Process Clause of the Fifth Amendment prohibits the Government from exposing an individual to a danger which he would not have otherwise faced. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) citing *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197, 201 (1989). A civil detainee's constitutional rights are violated if a condition of his confinement places him at substantial risk of suffering serious harm, such as the harm caused by a pandemic. *See Smith v, Wash.*, 781 F. App'x. 595, 588 (9th Cir. 2019).

Here, Petitioners argued that the conditions at Adelanto expose them to a substantial risk of suffering serious harm – increasing their exposure to or contracting COVID-19. When the Government detains a person, thereby taking custody of that person, it creates a special relationship wherein the Government assumes responsibility for that detainee's safety and well-being. *See, e.g., Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012). If the Government fails to provide for a detainee's basic human needs, including medical care and reasonable safety, the Due Process Clause is violated. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Indeed, the Due Process Clause mandates that civil immigration detainees are entitled to more than minimal human necessities. *See Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004). At a minimum, here, the Government owes a duty to Petitioners, as civil immigration detainees, to reasonably abate known risks. *See Castro v. Cty. of Los*

*Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). Inadequate health and safety measures at a detention center cause cognizable harm to every detainee at that center. *See Parsons v. Ryan*, 754 F.3d 657, 679 (9th Cir. 2014).

Petitioners are entitled to a temporary restraining order if they show: (1) A likelihood of success on the merits; (2) That they are likely to suffer irreparable harm in the absence of relief; (3) The balance of equities tip in their favor; and (4) An injunction is in the public's interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding scale approach, a stronger showing of one element may offset a weaker showing of another. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Accordingly, Petitioners are entitled to a temporary restraining order if "serious questions going to the merits [are] raised and the balance of hardships tips sharply in [their] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

In its opposition brief, the Government sets forth the United States Attorney General's discretionary right to detain an alien in removal proceedings prior to a final order of removal. *See* 8 U.S.C. § 1226. Indeed, the Attorney General has the discretion to either: (1) Detain the person without bond or (2) Release the person on a bond of at least $1,500.00 or on conditional parole. 8 U.S.C. § 1226(a). In making the initial bond determination, a BICE officer must assesses whether the person has "demonstrate[d]" that "release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If the BICE officer determines that release, with or without bond, is not appropriate, then the person may appeal to an Immigration Judge. 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). The Immigration Judge's decision, then, would be appealable to the Board of Immigration Appeals. 8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38.

However, because the Petitioners, here, have asserted claims for violations of their Fifth Amendment substantive due process rights, and those claims exceed the jurisdictional limits of the Immigration Court and the Board of Immigration Appeals,

Petitioners need not first exhaust their administrative remedies. *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005).

The Government argued that Petitioners lack standing because they cannot establish that they would suffer a concrete, non-hypothetical injury absent a temporary restraining order in that their likelihood of contracting COVID-19 is speculative. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

However, it is clear that "[a] remedy for unsafe conditions need not await a tragic event." *Helling*, 509 U.S. at 33. The Government cannot be "deliberately indifferent to the exposure of [prisoners] to a serious, communicable disease on the ground that the complaining [prisoner] shows no serious current symptoms." *Helling*, 509 U.S. at 33. "That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling*, 509 U.S. at 33. The Supreme Court clearly stated that "… the Eighth Amendment protects [prisoners] against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering… ." *Helling*, 509 U.S. at 33. Indeed, the Court concluded that where prisoners in punitive isolation were crowded into cells and some of them had infectious maladies, "… the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed." *Helling*, 509 U.S. at 33. Civil detainees are entitled to greater liberty protections than individuals detained under criminal processes. *See Jones*, 393 F.3d at 932.

In its *amicus* brief filed in *Helling*, the Government stated that it "… recognizes that there may be situations in which exposure to toxic or similar substances would present a risk of sufficient likelihood or magnitude – and in which there is a sufficiently broad consensus that exposure of *anyone* to the substance should therefore be prevented – that the [Eighth] [A]mendment's protection would be available even though the effects of exposure might not be manifested for some time." *Helling*, 509 U.S. at 34. The Government, here, cannot say, with any degree of certainty, that no one – staff or

detainee – at Adelanto has not been, or will not be, infected with the coronavirus. The science is well established – infected, asymptomatic carriers of the coronavirus are highly contagious. Moreover, the Petitioners presently before the Court are suffering from a condition of confinement that takes away, *inter alia*, their ability to socially distance. The Government cannot be deliberately indifferent to the Petitioners' potential exposure to a serious, communicable disease on the ground that they are not, now, infected or showing current symptoms. *See Helling*, 509 U.S. at 32.

It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling*, 509 U.S. at 33. The Eighth Amendment is violated when a condition of a criminal detainee's confinement puts him at substantial risk of suffering serious harm and that the condition causes suffering inconsistent with contemporary standards of human decency. *See Smith v. Wash.*, 781 F. App'x. 595, 597-598 (9th Cir. 2019). However, a civil detainee seeking to establish that the conditions of his confinement are unconstitutional need only show that his conditions of confinement "put [him] at substantial risk of suffering serious harm." *See Smith*, 781 F. App'x. 597-598. Here, BICE cannot be deliberately indifferent to the potential exposure of civil detainees to a serious, communicable disease on the ground that the complaining detainee shows no serious current symptoms, or ignore a condition of confinement that is more than very likely to cause a serious illness. *See Helling*, 509 U.S. at 32.

Under the Due Process Clause, a civil detainee cannot be subject to the current conditions of confinement at Adelanto. The Supreme Court has acknowledged that it has "… great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling*, 509 U.S. at 33

As the Court writes this order, the number of confirmed COVID-19 cases in the United States has already exceeded the number of confirmed cases in every other country on this planet. Indeed, all of the experts and political leaders agree that the

number of confirmed cases in the United States will only increase in the days and weeks ahead. The number of cases in the United States has yet to peak. In San Bernardino County, the number of confirmed cases, there, has tripled over the past five days.

The risk that Petitioners, here, will flee, given the current global pandemic, is very low, and reasonable conditions can be fashioned to ensure their future appearance at deportation proceedings. While both Petitioners have committed prior criminal offenses in this country related to driving under the influence, both Castillo and Vasquez have completed their sentences of five days and three days incarceration, respectively. Petitioners are not criminal detainees, they are civil detainees entitled to more considerate treatment than criminal detainees. *See Youngberg*.

Civil detainees must be protected by the Government. Petitioners have not been protected. They are not kept at least 6 feet apart from others at all times. They have been put into a situation where they are forced to touch surfaces touched by other detainees, such as with common sinks, toilets and showers. Moreover, the Government cannot deny the fact that the risk of infection in immigration detention facilities – and jails – is particularly high if an asymptomatic guard, or other employee, enters a facility. While social visits have been discontinued at Adelanto, the rotation of guards and other staff continues.

The Petitioners have established that there is more than a mere likelihood of their success on the merits. *See Winter*, 555 U.S. at 20.

The Petitioners have established that they are likely to suffer irreparable harm in the absence of relief. *See Winter*, 555 U.S. at 20. It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury. *See Hernanez v. Session*, 872 F.3d 976, 994 (9th Cir. 2017).

The balance of the equities tip sharply in favor of the Petitioners. The Petitioners faces irreparable harm to their constitutional rights and health. Indeed, there is no harm to the Government when a court prevents the Government from engaging in unlawful practices. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Finally, the emergency injunctive relief sought, here, is absolutely in the public's best interest. The public has a critical interest in preventing the further spread of the coronavirus. An outbreak at Adelanto would, further, endanger all of us – Adelanto detainees, Adelanto employees, residents of San Bernardino County, residents of the State of California, and our nation as a whole.

This is an unprecedented time in our nation's history, filled with uncertainty, fear, and anxiety. But in the time of a crisis, our response to those at particularly high risk must be with compassion and not apathy. The Government cannot act with a callous disregard for the safety of our fellow human beings.

Accordingly,

𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the motion for a temporary retraining order be, and hereby is, 𝕲𝖗𝖆𝖓𝖙𝖊𝖉.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that the Respondents shall, forthwith and without delay, release Petitioners Pedro Bravo Castillo and Luis Vasquez Rueda from custody pending further order of this Court.

𝕴𝖙 𝖎𝖘 𝖋𝖚𝖗𝖙𝖍𝖊𝖗 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 the Respondents shall show cause, if they have any, as to why the Court should not issue a preliminary injunction in this case. The Respondents' response, if any, to this order to show cause shall be filed by Noon on April 6, 2020. Petitioners' reply, if any, to Respondents' response shall be filed by Noon on April 9, 2020. The matter will then stand submitted.

Date: March 27, 2020

_____
𝕿𝖊𝖗𝖗𝖞 𝕵. 𝕳𝖆𝖙𝖙𝖊𝖗, 𝕵𝖗.
𝕾𝖊𝖓𝖎𝖔𝖗 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕵𝖚𝖉𝖌𝖊